UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARLBERT A. WHITE,

    Plaintiff,

v.

CHILDREN'S NETWORK OF
SOUTHWEST FLORIDA, L.L.C., A
FLORIDA LIMITED LIABILITY
COMPANY;

    Defendant.

Case No. 2:24-cv-00697-KCD-NPM

## ORDER

Before the Court is Defendant Children's Network of Southwest Florida, L.L.C.'s ("Children's Network") motion to dismiss. (Doc. 55.)[1] Plaintiff Calbert A. White has responded in opposition (Doc. 64), making this matter ripe. For the reasons below, the motion is **GRANTED**.

### I. Background[2]

This is an employment discrimination case. White, who is 65 years old, worked as a case manager for Children's Network. (Doc. 54 ¶¶ 15-19.) He had two consecutive supervisors during his employment there—Kerr and Vigo. (*Id.*

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

[2] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

¶¶ 22, 36.) According to White, Kerr made several comments about him being "too old" for the job. (*Id.* ¶¶ 23-25, 38.) And Vigo "questioned [White] as to how old he was because he needed to pick it up regarding his cases and home visits even though all of his cases and home visits were already completed." (*Id.*)

When White expressed concerns about these comments, Kerr was "hostile and unresponsive," and his superiors "too busy" to discuss Kerr's "discriminatory actions." (*Id.* ¶¶ 26-35.) In fact, White claims that Children's Network "retaliated by assigning [him] the[ir] most difficult cases" because he requested to meet with his superiors. (*Id.* ¶¶ 39-41.) And according to White, he "was denied all or nearly all requests for resources, supervisory support, and assistance with direction for the[se] difficult cases." (*Id.* ¶ 42.)

While White was on vacation, a five-year-old child from one of his assigned cases died. (*Id.* ¶ 57.) When White returned and learned the news, Vigo blamed him for the child's death. (*Id.* ¶ 58.) At some point, White's employment at Children's Network terminated, although he does not specify how. (*Id.* ¶ 48.) Vigo later told potential employers that White "killed a kid." (*Id.* ¶ 59.) This apparently led to subsequent job offers being rescinded. (*Id.* ¶ 65.)

The operative complaint, which has been amended three times, alleges only two counts: age discrimination under federal law (Count I) and

defamation under Florida law (Count II). (Doc. 54.) Each claim is addressed in turn below.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

## III. Discussion

### A. Count I

The Age Discrimination in Employment Act of 1967 ("ADEA") makes it "unlawful for an employer to … [discriminate against] any individual [who is at least 40 years old] because of [their] age." 29 U.S.C. § 623(a)(1). To establish an ADEA claim, White must show that his age was the "but-for" cause of the

adverse employment action he was subject to. *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 641 (11th Cir. 2018).

There are multiple ways to prove age discrimination, each requiring different elements. For this reason, the Court's previous order addressed concerns about "White bringing multiple claims under the same statute." (Doc. 49.) Specifically, the Court explained:

> Count I is titled "Age Discrimination in Violation of the Age Discrimination in Employment Act of 1967" but incorporates factual allegations relating to disparate treatment and hostile work environment. *Chandler v. Stakeholder Payroll Servs. LLC*, No. 5:23-CV-1101-CLM, 2024 WL 4031367, at *5 (N.D. Ala. Sept. 3, 2024) ("[Plaintiff] should replead her complaint to state the specific claim she brings in each count, and if she brings multiple claims or theories under the same statute (ADEA, for example), then she should 'separate[e] into a different count each cause of action or claim for relief.'") … It is "virtually impossible" to decipher Mr. White's age discrimination claims when it purports to bring multiple legal theories … For this reason alone, Count[] I [is] due to be dismissed. If Plaintiff attempts to amend his Amended Complaint, he must specify the legal basis and facts supporting that claim in each count.

(Doc. 49.)

In his latest complaint, White seemingly relies on a hostile work environment theory, yet again incorporates factual allegations of retaliation. (Doc. 54 at 8.) In the motion to dismiss, Children's Network assumes he is claiming a hostile work environment, retaliation, *and* disparate treatment.

4

White's response brief does not dispute this broader interpretation. Either way, all three theories require White to allege sufficient facts to establish he suffered some sort of adverse action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (holding that a disparate-treatment claim requires the plaintiff to prove that "age was the but-for cause of the employer's adverse decision."); *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) (holding that a retaliation claim "require[s] proof that the protected activity was a but-for cause of the alleged adverse action"); *Slattery v. Neumann*, 200 F. Supp. 2d 1367, 1371 (S.D. Fla. 2002) (holding that an adverse action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits.") For a hostile work environment claim, the harassment must be sufficiently severe or pervasive to alter the terms and conditions of employment, thus constituting a de facto adverse action. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

White argues that he meets this pleading requirement and leaves it at that. But the only actions he claims Children's Network took against him were Vigo and Kerr mocking his age, and his superiors refusing to meet with him,

5

assigning him challenging cases, and denying his requests for help.[3] (Doc. 54 ¶¶ 21-44.) None of these, even when considered in the aggregate, establishes an adverse action or hostility so severe that it alters his conditions of employment.

"Adverse employment actions … consist of things that affect continued employment or pay, such as terminations, demotions, suspensions without pay, and pay raises or cuts, as well as other things that are similarly significant standing alone." *Amaya v. Vilsack*, 754 F. Supp. 3d 1311 (S.D. Fla. 2024). "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 800 (11th Cir. 2014).

White does not allege any facts that suggest Children's Network took a tangible adverse action against him. And although denying "resources" and "assistance" could be denying him benefits, the Court cannot make that determination on this bare record. White's conclusory declarations of insufficient resources and help are not enough. To push his claims into the realm of plausibility, he needed actual facts—like identifying whether the

---

[3] Although a termination of employment can be an adverse action even if White quit due to his employer deliberately making his working conditions intolerable (a constructive discharge), the Court previously held that White must explicitly allege that he resigned if he wants to pursue this theory. (Doc. 49 at 14.) White does not specify who terminated his employment, nor does he claim he resigned, so the Court will not consider his termination as an adverse action.

6

resources and assistance he sought were more than help with difficult assignments, or whether Children's Network offered those benefits to other employees. *See McCone*, 582 F. App'x at 800 ("[B]ecause work assignment claims strike at the very heart of an employer's business judgment and expertise, absent unusual circumstances, they typically do not constitute adverse employment actions.").

As for the hostile work environment claim, employers can be liable when, despite not taking any tangible adverse action, their harassment is "sufficient to constructively alter an employee's working conditions." *Mangrum v. Republic Indus., Inc.*, 260 F. Supp. 2d 1229, 1248 (N.D. Ga. 2003). But "ordinary tribulations of the workplace, such as sporadic use of abusive language, [age]-related jokes, and occasional teasing cannot form the basis of a claim for actionable harassment or hostile work environment." *Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d 1129, 1141 (M.D. Fla. 2016). The employer's conduct "must be extreme to amount to a change in terms and conditions of employment." *Id.*

The bar here is high. A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult." *Johnson v. Fam. Prac. & Inj. Ctr., Inc.*, 437 F. Supp. 3d 1108, 1127 (M.D. Fla. 2020); *see also Comerinsky v. Augusta Coating & Mfg., LLC*, 418 F. Supp. 3d 1252, 1262 (S.D. Ga. 2019) (holding that "forcing [plaintiff] to work through lunch breaks

7

off the clock, run personal errands for [her supervisor], and perform tasks against medical advice" is a "concrete example[] of how the alleged harassment changed the terms and conditions of Plaintiff's employment."). Calling White old—even if as often as three times per week—and assigning him difficult cases with little assistance may be objectively offensive. (Doc. 54 ¶ 50.) But this behavior does not rise to a level that would change the terms of his employment. *See King v. CVS Caremark Corp.*, 2 F. Supp. 3d 1252, 1262 (N.D. Ala. 2014) (holding that a supervisor's numerous non-threatening retirement-related comments, write-ups for trivial performance issues, a constant barrage of unjustified and petty criticisms of his work, name-calling such as "liar," "thief" and "lazy," and a subsequent discharge of employment were not severe and pervasive job-altering harassment).

    Having failed to allege an adverse employment action or an objectively hostile environment, Count I must be dismissed. Like before, White requests leave to amend. (Doc. 64 at 10.) While the Federal Rules favor granting leave to amend whenever justice so requires, that policy is not without limits. White is now operating on his third complaint. In its previous order, the Court did more than just dismiss the prior iteration; it provided a roadmap for fixing it, explaining the necessity of separating legal theories and the specific requirements for alleging constructive discharge. Yet White returned with a pleading that repeats the very errors the Court already flagged. When a

8

plaintiff has had three chances to state a claim—and failed to do so despite specific guidance—the Court is entitled to say that enough is enough. White also failed to file a separate motion or attach the amended complaint as required. *See Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 903 (11th Cir. 2020). Dismissal with prejudice is thus warranted here. *Id.* ("A district court need not ... allow an amendment ... where there has been ... repeated failure to cure deficiencies by amendments previously allowed.").

### B. Count II

In its previous order, the Court dismissed White's defamation claim because it did not identify the substance, speaker, or receiver of the defamatory statements. (Doc. 49 at 28-29.) Now, White has seemingly alleged the facts to constitute a viable case. "While no party addresses whether the Court should continue to exercise supplemental jurisdiction" over this state law claim, the issue can be raised sua sponte. *See Oakes v. Collier Cnty.*, 515 F. Supp. 3d 1202, 1217 (M.D. Fla. 2021).

We had jurisdiction over the defamation claim only because it was tethered to the ADEA charge. But with the federal claim now dismissed, the anchor for federal jurisdiction is gone. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction once it has dismissed all claims over which it had original jurisdiction. *Id.* Given that the parties are

not diverse (Doc. 54 ¶¶ 7-13), and the federal claims have been resolved at the pleading stage, the Court sees no reason to retain a purely state-law dispute.

District courts are generally "encouraged . . . to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004); *see also Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999). And the factors that guide this decision—judicial economy, convenience, fairness, and comity—all point toward the exit. To be sure, the parties have already engaged in discovery, and judicial economy often weighs against starting over. But dismissal here does not mean returning to square one. The work the parties have done is not a sunk cost. They can walk their depositions and document production across the street to state court and pick up exactly where they left off. Thus, judicial economy does not demand that this Court cling to a dispute that has lost its federal reason for being here. The remaining claim is a matter of Florida law between Florida parties. Comity dictates that Florida judges should have the final say on it. Accordingly, the Court declines to exercise supplemental jurisdiction.

## IV. Conclusion

For these reasons, White's complaint is **DISMISSED** for failure to state a claim (Count I) and lack of jurisdiction (Count II). The Clerk is directed to terminate any pending deadlines and close the case.

**ORDERED** in Fort Myers, Florida, on January 14, 2026.

Kyle C. Dudek
United States District Judge